1

2

3

4

5

6

7             UNITED STATES DISTRICT COURT

8               EASTERN DISTRICT OF CALIFORNIA

9

10

CUAHUTEMOC ROMERO,               ) 1:12-cv—00678-AWI-SKO-HC
11                                )
                    Petitioner,   ) FINDINGS AND RECOMMENDATIONS TO
12                                ) DISMISS THE PETITION WITHOUT
                                  ) LEAVE TO AMEND (DOCS. 1, 2)
13      v.                        )
                                  ) FINDINGS AND RECOMMENDATIONS TO
14 STATE OF CALIFORNIA, and JAMES ) DECLINE TO ISSUE A CERTIFICATE OF
   D. HARTLEY, Warden,            ) APPEALABILITY AND TO DIRECT THE
15                                ) CLERK TO CLOSE THE ACTION
                    Respondents.  )
16                                ) OBJECTIONS DEADLINE:
                                  ) THIRTY (30) DAYS
17

18        Petitioner is a state prisoner proceeding pro se and in

19 forma pauperis with a petition for writ of habeas corpus pursuant

20 to 28 U.S.C. § 2254.  The matter has been referred to the

21 Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local

22 Rules 302 through 304.  Pending before the Court is the petition,

23 which was filed on April 30, 2012.

24      I.  Screening the Petition

25        Rule 4 of the Rules Governing § 2254 Cases in the United

26 States District Courts (Habeas Rules) requires the Court to make

27 a preliminary review of each petition for writ of habeas corpus.

28 The Court must summarily dismiss a petition "[i]f it plainly

                                1

1   appears from the petition and any attached exhibits that the

2   petitioner is not entitled to relief in the district court...."

3   Habeas Rule 4; O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir.

4   1990); see also Hendricks v. Vasquez, 908 F.2d 490 (9th Cir.

5   1990).  Habeas Rule 2(c) requires that a petition 1) specify all

6   grounds of relief available to the Petitioner; 2) state the facts

7   supporting each ground; and 3) state the relief requested.

8   Notice pleading is not sufficient; rather, the petition must

9   state facts that point to a real possibility of constitutional

10  error.  Rule 4, Advisory Committee Notes, 1976 Adoption;

11  O'Bremski v. Maass, 915 F.2d at 420 (quoting Blackledge v.

12  Allison, 431 U.S. 63, 75 n.7 (1977)).  Allegations in a petition

13  that are vague, conclusory, or palpably incredible are subject to

14  summary dismissal.  Hendricks v. Vasquez, 908 F.2d at 491.

15      The Court may dismiss a petition for writ of habeas corpus

16  either on its own motion under Habeas Rule 4, pursuant to the

17  respondent's motion to dismiss, or after an answer to the

18  petition has been filed.  Advisory Committee Notes to Habeas Rule

19  8, 1976 Adoption;  see, Herbst v. Cook, 260 F.3d 1039, 1042-43

20  (9th Cir. 2001).  A petition for habeas corpus should not be

21  dismissed without leave to amend unless it appears that no

22  tenable claim for relief can be pleaded were such leave granted.

23  Jarvis v. Nelson, 440 F.2d 13, 14 (9th Cir. 1971).

24      Here, Petitioner alleges that he is an inmate of the Avenal

25  State Prison (ASP) serving a sentence of fifteen years to life

26  imposed on April 5, 1999, in the Superior Court of the State of

27  California, County of Los Angeles, for second degree murder in

28  violation of Cal. Pen. Code § 187(a).  (Pet. 1, 9.)  Petitioner

1   pled guilty to the offense.  (Id. at 9.)  Petitioner complains of

2   constitutional violations allegedly suffered when California's

3   Board of Parole Hearings (BPH) found on May 25, 2010, at

4   Petitioner's initial parole consideration hearing, that he was

5   unsuitable for parole.  The BPH ruled that Petitioner's next

6   parole suitability proceeding would not occur for five years.

7   Petitioner seeks a new parole hearing to be held under the laws

8   in effect at the time of his conviction.  (Id. at 10, 17.)

9      Petitioner raises the following claims in the petition:  1)

10  his right to due process of law was violated by the state court's

11  construction of Cal. Pen. Code § 3041[1]; 2) the decision denied

12  Petitioner's federal right to due process of law because the

13  decision was arbitrary, capricious, and fundamentally unfair as

14  based on an unreasonable determination of facts; 3) Petitioner

15  was denied due process because the parole hearing was

16  fundamentally unfair based on the BPH's reasons for the decision,

17  which were not authorized by California's regulations or

18  statutes; 4) the parole hearing was fundamentally unfair because

19  the decision was arbitrary and capricious, and it was not based

20  on evidence with scientific support but rather was based on a

21  long-standing practice of rarely setting dates at the initial

22  hearing; 5) the parole procedures were unfair because there was

23  no right to contest the evidence ultimately used by the BPH to

24  find an inmate unsuitable; 6) the BPH was not impartial; and 7)

25  the prohibition against ex post facto laws was violated by the

26  retroactive application to Petitioner of California's Proposition

27

28      [1] Cal. Pen. Code § 3041 provides in pertinent part that a parole release
    date shall normally be set at the initial parole consideration hearing.

3

1   9, the "Victims' Bill of Rights Act of 2008: Marsy's Law," which

2   on November 4, 2008, effected an amendment of Cal. Pen. Code

3   § 3041.5(b)(3) that resulted in a lengthening of the period

4   between parole suitability hearings.

5      II.  <u>Background</u>

6      Petitioner was found guilty of beating to death his

7   girlfriend's daughter, who was two and one-half years old.  The

8   probation officer's report stated that Petitioner claimed that

9   the child fell off a bed and into a wall while playing with

10   Petitioner and the victim's six-year-old brother, sustained a

11   bruise to her eye and nose, and several days later could not be

12   roused to consciousness after an attempt to awaken her, which

13   included slapping her in the face a few times and unsuccessfuly

14   attempting cardio-pulmonary resuscitation.  Petitioner admitted

15   having slapped the victim with an open hand five times on her

16   bare buttocks because she urinated on herself.

17      Officers observed that the victim had one black and blue eye

18   swollen shut, one yellowish eye with some black and blue

19   coloring, and bruising on both sides of the rib cage, both arms

20   above the wrists, the thighs and lower leg, and both sides of the

21   buttocks.  There were marks on her back and calf, and a cut on

22   her chin.  An autopsy attributed the cause of death to blunt

23   force trauma to the head and manual strangulation.  The victim's

24   brother described incidents that occurred when their mother, the

25   Petitioner's girlfriend, was not home in which Petitioner would

26   hang the victim in a closet by her hands with her arms

27   outstretched, put the victim in cold baths, tie the victim to the

28   toilet with an electric cord, and hit the victim on her back and

1  buttocks with a belt, causing the victim to cry, scream, and try
2  to bite his fingers.  Once when the victim and her brother were
3  jumping on the bed, Petitioner threw the victim, and her head hit
4  the wall very hard.  (Pet. 18-20.)

5      Petitioner alleges that he did not deny that his actions
6  caused the victim's death, but he denies having committed
7  intentional or malicious actions against the victim.  (Id. at
8  22.)  Petitioner contends that his denial of a history of
9  domestic violence was misunderstood as a broader denial of
10 culpability for causing the death of a child after beating her.
11 (Id. at 23.)

12     At the parole hearing, Petitioner appeared with counsel,
13 gave extensive sworn testimony to the commissioners in response
14 to their questions, and was given an opportunity to make a
15 statement, which he declined.  (Pet., Ex. B, doc. 2, 35-36, 39-
16 120.)  At the beginning of the hearing, both Petitioner and his
17 counsel acknowledged that Petitioner had been informed of his
18 rights with respect to the hearing, and there had been no
19 violations of those rights.  (Id. at 37-38.)  Petitioner's
20 counsel made a statement in favor of Petitioner's suitability.
21 (Id. at 118-120.)  Petitioner was present when the commissioners
22 stated their reasons for finding Petitioner unsuitable for
23 parole.  (Id. at 121-133.)

24     At the hearing, Petitioner accepted the truth of the summary
25 of the facts pertaining to the crime as previously set forth but
26 stated that it was hard to acknowledge all that had occurred; he
27 admitted having slapped the victim's buttocks for urinating, but
28 he denied beating her and maintained that the other bruises were

sustained during rough play and a fall while exiting the shower. He denied knowing how the strangulation marks were caused.  His explanation for the death was that he did not know how to take care of the child, and he imposed hard discipline.  He admitted that she was in cold water because the hot water went away in the shower, but as to the other statements of the victim's brother, Petitioner asserted that the little boy lied, and the victim's other injuries were self-inflicted as a result of her climbing and falling.  (Id. at 42-57.)  Petitioner admitted gang involvement since he was fifteen, membership in a street gang, and an alcohol problem.  (Id. at 77-78, 83.)  He admitted that he had difficulty coming to terms with what he had done, and he further admitted that he had told the psychological evaluator that he was not remorseful for the crime because he could not be remorseful for something he did not do.  (Id. at 112-116.)

The BPH's reasons for finding Petitioner unsuitable for parole for five years were that Petitioner presented an unreasonable danger to the safety of the public and society.  The conclusion was based on the heinous, callous, and cruel nature of the commitment offense and Petitioner's minimization of his conduct and responsibility for the killing.  The BPH found that Petitioner was not credible because his version of the crime was inconsistent with the physical evidence.  Further, although Petitioner knew that he had made bad decisions, he lacked insight into why he had committed the crime, and he was unable to admit freely facts unrelated to the commitment offense, such as his involvement in gangs.  The BPH also relied on Petitioner's criminal history of spousal abuse and possession of a concealed

6

weapon, his unstable social history, two previous failures to succeed on probation, and an unfavorable psychological report, which indicated a moderate risk of psychopathy, recidivism, and future violence.  (Id. at 151-153.)  The BPH acknowledged that Petitioner had participated well in programs in prison.  (Id. at 112-116.)

After the decision of the commissioners became final, Petitioner filed a petition for writ of habeas corpus in the Los Angeles Superior Court.  (Pet., App. 3, doc. 1, 85-90.)  Although Petitioner characterizes the court's order as a summary denial (pet. 10), a review of the order reveals that the court set forth its reasons for denying the petition.  The court concluded that the record of the parole hearing contained some evidence to support the determination that Petitioner currently presented an unreasonable risk of danger to society and a threat to public safety, and thus he was not suitable for parole.  (Id.)  Further, the application of Marsy's Law to Petitioner did not violate the prohibition against ex post facto laws.  (Id.)

Petitioner sought habeas corpus from the Court of Appeal of the State of California, Second Appellate District, which denied the petition summarily on July 12, 2011.  (Pet., App. 2, doc. 1, 83-84.)

On January 25, 2012, a petition for writ of habeas corpus filed by Petitioner in the California Supreme Court was summarily denied.  (Pet., App. 1, doc. 1, 81-82.)

III.  Legal Standards

Because the petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty

7

Act of 1996 (AEDPA), the AEDPA applies in this proceeding.  <u>Lindh v. Murphy</u>, 521 U.S. 320, 327 (1997), <u>cert.</u> <u>denied</u>, 522 U.S. 1008 (1997); <u>Furman v. Wood</u>, 190 F.3d 1002, 1004 (9th Cir. 1999).

A district court may entertain a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court only on the ground that the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. §§ 2254(a), 2241(c)(3); <u>Williams v. Taylor</u>, 529 U.S. 362, 375 n.7 (2000); <u>Wilson v. Corcoran</u>, 562 U.S. –, -, 131 S.Ct. 13, 16 (2010) (per curiam).

Title 28 U.S.C. § 2254 provides in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Clearly established federal law refers to the holdings, as opposed to the dicta, of the decisions of the Supreme Court as of the time of the relevant state court decision.  <u>Cullen v. Pinholster</u>, - U.S. -, 131 S.Ct. 1388, 1399 (2011); <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71 (2003); <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000).  A state court's decision contravenes clearly established Supreme Court precedent if it reaches a legal conclusion opposite to, or substantially different from, the

1  Supreme Court's or concludes differently on a materially

2  indistinguishable set of facts.  Williams v. Taylor, 529 U.S. at

3  405-06.  A state court unreasonably applies clearly established

4  federal law if it either 1) correctly identifies the governing

5  rule but then applies it to a new set of facts in a way that is

6  objectively unreasonable, or 2) extends or fails to extend a

7  clearly established legal principle to a new context in a way

8  that is objectively unreasonable.  Hernandez v. Small, 282 F.3d

9  1132, 1142 (9th Cir. 2002); see, Williams, 529 U.S. at 407.  An

10 application of clearly established federal law is unreasonable

11 only if it is objectively unreasonable; an incorrect or

12 inaccurate application is not necessarily unreasonable.

13 Williams, 529 U.S. at 410.

14     A state court's determination that a claim lacks merit

15 precludes federal habeas relief as long as it is possible that

16 fairminded jurists could disagree on the correctness of the state

17 court's decision.  Harrington v. Richter, 562 U.S. -, 131 S.Ct.

18 770, 786 (2011).

19     IV.  The State Court's Construction of Cal. Pen. Code
              § 3041 as a Violation of Due Process of Law

20     Petitioner argues that his right to due process of law and

21 his protected liberty interest under Cal. Pen. Code § 3041 were

22 violated by the state court's construction of Cal. Pen. Code

23 § 3041, which constituted an unreasonable enlargement of the

24 statute, failed to restrict administrative discretion, and

25 permitted the denial of parole in the vast majority of cases.

26 Petitioner argues that the state court's construction of § 3041

27 is contrary to the terms of the statute, contrary to state

28

regulations, and a misapplication of legislative intent. Petitioner contends that a construction that permits the BPH to deny parole to the overwhelming majority of prisoners serving indeterminate sentences perverts the statute and the liberty interest created by the statute; further, it renders individual parole hearings per se unfair and predisposed.

Before proceeding further to address the more precise contentions involved in Petitioner's due process argument, two basic principles that limit this Court's review of the state court decisions must be considered.

First, the Supreme Court has characterized as reasonable the decision of the Court of Appeals for the Ninth Circuit that California law creates a liberty interest in parole protected by the Fourteenth Amendment Due Process Clause, which in turn requires fair procedures with respect to the liberty interest. Swarthout v. Cooke, 562 U.S. –, 131 S.Ct. 859, 861-62 (2011).

However, the procedures required for a parole determination are the minimal requirements set forth in Greenholtz v. Inmates of Neb. Penal and Correctional Complex, 442 U.S. 1, 12 (1979).[2]

---

[2] In Greenholtz, the Court held that a formal hearing is not required with respect to a decision concerning granting or denying discretionary parole; it is sufficient to permit the inmate to have an opportunity to be heard and to be given a statement of reasons for the decision made. Id. at 16. The decision maker is not required to state the evidence relied upon in coming to the decision. Id. at 15-16. The Court reasoned that because there is no constitutional or inherent right of a convicted person to be released conditionally before expiration of a valid sentence, the liberty interest in discretionary parole is only conditional and thus differs from the liberty interest of a parolee. Id. at 9. Further, the discretionary decision to release one on parole does not involve retrospective factual determinations, as in disciplinary proceedings in prison; instead, it is generally more discretionary and predictive, and thus procedures designed to elicit specific facts are unnecessary. Id. at 13. In Greenholtz, the Court held that due process was satisfied where the inmate received a statement of reasons for the decision and had an effective opportunity to insure that the records being considered were his records, and to present any special considerations demonstrating why he was an appropriate candidate for parole. Id. at 15.

Swarthout v. Cooke, 131 S.Ct. 859, 862.  In Swarthout, the Court rejected inmates' claims that they were denied a liberty interest because there was an absence of "some evidence" to support the decision to deny parole.  The Court stated:

> There is no right under the Federal Constitution
> to be conditionally released before the expiration of
> a valid sentence, and the States are under no duty
> to offer parole to their prisoners.  (Citation omitted.)
> When, however, a State creates a liberty interest,
> the Due Process Clause requires fair procedures for its
> vindication–and federal courts will review the
> application of those constitutionally required procedures.
> In the context of parole, we have held that the procedures
> required are minimal.  In Greenholtz, we found
> that a prisoner subject to a parole statute similar
> to California's received adequate process when he
> was allowed an opportunity to be heard and was provided
> a statement of the reasons why parole was denied.
> (Citation omitted.)

Swarthout, 131 S.Ct. 859, 862.  The Court concluded that the petitioners had received the process that was due as follows:

> They were allowed to speak at their parole hearings
> and to contest the evidence against them, were afforded
> access to their records in advance, and were notified
> as to the reasons why parole was denied....
>
> That should have been the beginning and the end of
> the federal habeas courts' inquiry into whether
> [the petitioners] received due process.

Swarthout, 131 S.Ct. at 862.  The Court in Swarthout expressly noted that California's "some evidence" rule is not a substantive federal requirement, and correct application of California's "some evidence" standard is not required by the federal Due Process Clause.  Id. at 862-63.

Second, alleged errors in the application of state law are not cognizable in federal habeas corpus.  Souch v. Schaivo, 289 F.3d 616, 623 (9th Cir. 2002); Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996).  The Court accepts a state court's

interpretation of state law.  <u>Langford v. Day</u>, 110 F.3d at 1389.
In a habeas corpus proceeding, this Court is bound by the
California Supreme Court's interpretation of California law
unless the interpretation is deemed untenable or a veiled attempt
to avoid review of federal questions.  <u>See</u>, <u>Mullaney v. Wilbur</u>,
421 U.S. 684, 691 n.11 (1975); <u>Murtishaw v. Woodford</u>, 255 F.3d
926, 964 (9th Cir. 2001).

With respect to Petitioner's challenge to § 3041 and the
associated regulations, this Court is bound by the California
court's determination of state law.

At all times pertinent to this action, Cal. Pen. Code § 3041
provided in pertinent part, with respect to indeterminately
sentenced inmates, as follows:

> One year prior to the inmate's minimum eligible
> parole release date a panel of two or more commissioners
> or deputy commissioners shall again meet with the inmate
> and shall normally set a parole release date as provided
> in Section 3041.5.

Cal. Pen. Code § 3041(a).  The statute further provides in part
the following:

> The board shall establish criteria for the setting of
> parole release dates and in doing so shall consider the
> number of victims of the crime for which the inmate
> was sentenced and other factors in mitigation or
> aggravation of the crime.

(<u>Id.</u>)

Although Petitioner asserts that his liberty interest in
parole is violated by the reliance on intermediate factors
concerning parole suitability expressed in the regulations, the
California courts have defined a parolee's expectation as to
parole in a different manner.

California courts have issued decisions that are

1   inconsistent with Petitioner's position concerning the propriety

2   of the governing construction and application of § 3041.   The

3   statute has been interpreted to require the BPH to grant parole

4   unless it determines that public safety requires a lengthier

5   period of incarceration because of the gravity of the offense

6   underlying the conviction.   In re Rosenkrantz, 29 Cal.4th 616,

7   654 (2002).   The expectation of parole applicants is only that

8   they will be granted parole unless the BPH finds, in the exercise

9   of its discretion, that they are unsuitable for parole because

10  currently dangerous in light of the circumstances specified by

11  statute and regulation.   In re Lawrence, 44 Cal.4th 1181, 1204

12  (2008).

13       The state courts have determined that the BPH may base a

14  decision to deny parole on the circumstances of the offense or

15  upon other immutable facts, such as an inmate's criminal history,

16  if those facts support the ultimate conclusion that an inmate

17  continues to pose an unreasonable risk to public safety.   Such a

18  conclusion should be based on an individualized consideration of

19  the facts of the crime in the context of the inmate's pre-

20  incarceration and post-incarceration history, the passage of

21  time, and any attendant changes in an inmate's psychological or

22  mental attitude.   In re Lawrence, 44 Cal.4th at 1212, 1214, 1221.

23  A failure to gain insight into the causative factors leading to

24  an offense is an indication that the inmate is currently

25  dangerous.   In re Shaputis, 44 Cal.4th 1241, 1259-60 (2008)

26  (finding that despite considerable evidence of long-term

27  rehabilitation in prison, some evidence existed to support a

28  denial of parole based on the heinous nature of the offender's

1  murder of his wife, his long history of violent and brutalizing

2  behavior toward the victim and the remainder of the family, his

3  continued insistence that his shooting of the victim was an

4  accident, and his failure to gain insight or understanding into

5  his violent conduct or his commission of the commitment offense);

6  In re Shippman, 185 Cal.App.4th 446, 458-60 (2010) (the

7  offender's lack of insight into what caused him to murder his

8  wife and his minimization of culpable conduct supported a

9  conclusion that the offender would not be able to avert continued

10  misconduct in the future, and thus it indicated continued

11  dangerousness).

12      This Court is bound by the state court's decisions on

13  matters of state law.  A state's misapplication of its own laws

14  does not provide a basis for granting a federal writ of habeas

15  corpus.  Roberts v. Hartley, 640 F.3d 1042, 1046 (9th Cir. 2011).

16  It is not for this Court to determine whether the California

17  courts erred in their interpretation of § 3041, their application

18  of the regulatory enactments that were expressly authorized by

19  § 3041(a), or their definition of the liberty interest and the

20  scope of any corresponding expectations of release on parole that

21  may legitimately be held by indeterminately sentenced prisoners.

22      Petitioner argues that the statutory and regulatory scheme

23  concerning parole necessarily renders individual parole hearings

24  unfair because of the denial of the vast majority of parole

25  applications.  As the analysis of Petitioner's claim of a biased

26  tribunal will show in more detail, the mere fact that many or

27  even almost all parole applications are denied is insufficient to

28  demonstrate inherent unfairness.

1    Further, as Petitioner notes, in <u>Swarthout v. Cooke</u>, 131

2  S.Ct. 859, 861-62, the Court stated that fair procedures are

3  required with respect to the liberty interest of an inmate

4  serving an indeterminate term in California.  Insofar as

5  Petitioner's general argument about unfair hearings is pertinent

6  to his individual case, the record shows that Petitioner received

7  notice of the hearing, access to his records, an opportunity to

8  appear and to contest any evidence against him, and a statement

9  of reasons for the decision.  Pursuant to <u>Swarthout v. Cooke</u>, 131

10  S.Ct. 859, Petitioner received all process that was due.  In

11  addition, because California's "some evidence" rule is not a

12  substantive federal requirement, the correct application of

13  California's "some evidence" standard is not required by the

14  federal Due Process Clause.  <u>Id.</u> at 862-63.

15    With respect to Petitioner's specific assertion that his

16  right to due process of law has been violated by the California

17  courts' construction of § 3041, it appears that Petitioner may be

18  relying on cases such as <u>Bouie v. City of Columbia</u>, 378 U.S. 347,

19  350-54 (1964).  In <u>Bouie</u>, the Court condemned the construction of

20  a statute that prohibited entry on another's land with notice

21  that one was not to enter as also including the conduct of

22  remaining on the land after a request to depart.  <u>Bouie</u> held that

23  due process prohibits retroactive application of any judicial

24  construction of a criminal statute that is unexpected and

25  indefensible by reference to the law which has been expressed

26  prior to the conduct in question.  <u>Id.</u>

27    The two basic constitutional principles offended by the

28  state court's statutory construction in <u>Bouie</u> included the due

process requirement of notice and the protection against ex post
facto laws.  The Due Process Clause demands that a criminal
statute give fair warning of the conduct that it makes a crime.
A criminal statute must be sufficiently definite to give a person
of ordinary intelligence fair notice that his contemplated
conduct is forbidden by the statute.  The statute may not either
forbid or require the doing of an act in terms so vague that
persons of common intelligence must necessarily guess at its
meaning and differ as to its application.  The requirement of
notice, however, may be offended not only by a statute's vague or
uncertain terminology, but also by judicial construction of a
statute that is narrow and precise on its face but which by
construction has been unforeseeably and retroactively expanded.
Such a defect in notice can be particularly pernicious because it
does not simply present vagueness or uncertainty, but rather is
affirmatively misleading as to the conduct covered by the
statute.  Id. at 352-53.

        Because the state's judicial construction of a criminal
statute is generally not revealed until the decision of the state
court is rendered, the construction is applied after the
occurrence of the conduct sought to be punished as criminal.  In
this sense, the construction is applied retroactively.  It thus
may be contended that the construction operates as an ex post
facto law because it criminalizes an otherwise innocent action
done before the passing of the law or increases punishment for
such conduct.  Id. at 353.

        Here, the enactment that was the subject of the allegedly
unconstitutional construction is not a statute defining a

16

criminal offense or sentence, but rather one which, along with related state statutes and regulations, empowers the BPH to consider multiple factors of suitability and to exercise discretion in determining parole suitability.  Petitioner's interests are not comparable to the liberty interest of a person charged with a criminal offense.  On the contrary, as previously noted, even where state law creates a liberty interest in parole, there is no federal right to be conditionally released before the expiration of a valid sentence.  Roberts v. Hartley, 640 F.3d at 1045 (citing Swarthout v. Cooke, 131 S.Ct. at 861-62).  Further, the application of the parole statute presents no risk of uncertainty with respect to the conduct included within the scope of a statute imposing criminal liability.  Likewise, because neither criminal liability nor criminal punishment is expanded by the challenged construction or application, there is no ex post facto problem.

In sum, Petitioner's allegations concerning the state's allegedly narrow and restrictive construction or application of § 3041 do not point to a real possibility of constitutional error.  In connection with this claim, Petitioner has not alleged facts that would entitle him to relief in a proceeding pursuant to 28 U.S.C. § 2254.

With respect to the propriety of granting leave to amend the petition, the Court notes that Petitioner has set forth the entire transcript of the parole proceedings, which reflects that he received all process that was due.  The defect in Petitioner's due process claim relating to the construction of Cal. Pen. Code § 3041 relates to the nature of the claim and not to any dearth

1  of allegations of specific facts or other record defect.  If
2  Petitioner were granted leave to amend, he could not state a
3  tenable due process claim.  Thus, granting leave to amend would
4  be futile.

5      Accordingly, this Court will recommend that Petitioner's due
6  process claim concerning California's construction of its
7  statutes and regulations be dismissed without leave to amend.

8      V.  <u>Unreasonable Determination of Facts</u>

9      Petitioner argues that the unsuitability finding was based
10 on an unreasonable determination of facts, was arbitrary and
11 capricious, and thus was fundamentally unfair.  Petitioner
12 contends that his failure to accept the "official" version of the
13 facts of the crime does not automatically render him a danger to
14 the public safety or unsuitable for parole.  Petitioner parses
15 his denial of responsibility, noting that he admitted causing the
16 death but simply denied intentional or malicious killing, and
17 thus he was nevertheless profoundly remorseful for the death.
18 Petitioner challenges the statements of the victim's brother that
19 appeared in the probation report concerning the crime because the
20 child did not make the same statements to other investigators; he
21 characterizes the statements as untested hearsay statements,
22 exaggerations, or as fanciful statements emanating from the
23 little boy's dislike of Petitioner which have been implicitly
24 retracted.  Petitioner, who pled guilty, claims a violation of
25 his right to confront the witnesses against him, citing cases
26 concerning trials.  He argues that the statements of the child do
27 not rationally support a conviction of malicious killing.
28 Regarding the injuries noted in the autopsy report, Petitioner

1   asserts that his own explanations of injuries from play, falls,

2   and harsh discipline are neither impossible nor implausible to a

3   certainty.  Thus, he argues, the conclusions of the panel members

4   that Petitioner failed to take full responsibility, engaged in

5   minimization, and demonstrated lack of insight are subjective,

6   without support, and insufficient to support a finding that

7   Petitioner continued to present an unreasonable risk of

8   dangerousness.  (Pet. 41-49.)

9        Although Petitioner casts his argument as one regarding

10  arbitrary procedures based on the alleged arbitrariness of the

11  result, Petitioner in effect is arguing that the quantum and

12  quality of the evidence was insufficient to support the BPH's

13  findings.  However, as previously noted, review of the state

14  court's conclusion concerning the presence of some evidence to

15  support the finding of unsuitability is not within the scope of

16  this Court's due process review.  To the extent that Petitioner

17  argues that he suffered a denial of his right to confrontation,

18  Petitioner's claim has no merit because Petitioner waived his

19  right to confrontation when he entered his guilty plea.  Florida

20  v. Nixon, 543 U.S. 175, 187 (2004) (citing Boykin v. Alabama, 395

21  U.S. 238, 243 (1969)).

22       This Court concludes that Petitioner's claim concerning the

23  arbitrariness of the hearing should be dismissed without leave to

24  amend.

25       Although unclear, Petitioner appears to contend that his

26  claim is based on substantive due process rights.  However, there

27  is no substantive due process right created by California's

28  parole scheme.  Roberts v. Hartley, 640 F.3d at 1046.  If the

1   state affords the procedural protections required by <u>Greenholtz</u>

2   and <u>Cooke</u>, the Constitution requires no more.   <u>Roberts v.</u>

3   <u>Hartley</u>, 640 F.3d at 1046.  (<u>Id.</u>)

4        VI.   <u>Reliance on "Informal" Factors as in Excess of</u>
              <u>Authority and Unfair</u>

5

6        Petitioner acknowledges that the primary reason for the

7   finding of unsuitability was Petitioner's past and present mental

8   attitude toward the crime, including Petitioner's minimization of

9   his past conduct.  (Pet. 50.)  He argues, however, that his

10  hearing was unfair because the BPH relied on these factors and

11  others (prior arrests or criminality not resulting in

12  convictions, problematic social relationships, failure to profit

13  from previous attempts to correct his criminality on probation,

14  gang activity, drug and alcohol use, and an unfavorable

15  psychological evaluation) that are not specifically set forth in

16  Cal. Pen. Code § 3041(b).

17       At all pertinent times, Cal. Pen. Code § 3041(b) provided in

18  pertinent part as follows:

19       The panel or the board, sitting en banc, shall
         set a release date unless it determines that the
20       gravity of the current convicted offense or offenses,
         or the timing and gravity of current or past convicted
21       offense or offenses, is such that consideration of the
         public safety requires a more lengthy period of
22       incarceration for this individual, and that a parole
         date, therefore, cannot be fixed at this meeting.

23  However, as previously set forth, in § 3041(a), the California

24  legislature expressly mandated that the BPH establish criteria

25  for the setting of parole release dates and to consider factors

26  in mitigation or aggravation of the crime; there was no express

27  limitation on the BPH's authority to set criteria.  Further,

28  § 3041(b) requires the setting of a release date only in the

1  absence of a determination that the commitment offense or prior

2  offenses are such that consideration of the public safety

3  requires a more lengthy period of incarceration.  In Petitioner's

4  case, the BPH properly considered the safety of the public and

5  concluded that Petitioner continued to present an unreasonable

6  risk of danger.

7      As previously noted, in determining the extent of the

8  offender's current dangerousness, California case law expressly

9  permits a determination of the offender's dangerousness that

10  includes an individualized consideration of the offender's crime,

11  pre-incarceration and post-incarceration history, the passage of

12  time, and the status and development of an inmate's psychological

13  or mental attitude, including a failure to gain insight or

14  understanding into the crime or its commission.  In re Lawrence,

15  44 Cal.4th at 1204, 1212, 1214, 1221; In re Shaputis, 44 Cal.4th

16  at 1259-60; In re Shippman, 185 Cal.App.4th at 458-60.

17  Petitioner's contention that this was an erroneous or

18  unauthorized construction or application of state law amounts to

19  another request that this Court find that the state court's

20  interpretation or application of state law was erroneous.

21  However, no exceptional circumstances are present to displace the

22  governing rule that this Court is bound by the state courts'

23  interpretation of state law.

24      Accordingly, it will be recommended that Petitioner's claim

25  be dismissed without leave to amend.

26      VII.  Unfair Decision Based on Practice to Deny Parole

27      Petitioner argues that the decision was fundamentally unfair

28  because it was arbitrary, capricious, and based not on evidence

21

with scientific support, but rather on a long-standing practice
of rarely setting dates at an initial parole hearing.

Petitioner alleges that parole is set at initial hearings in
only one percent of all cases; parole was denied ninety-eight
percent of the time or more in the early 1980's, the 1990's, and
thereafter; he alleges that parole was denied eighty-five percent
of the time at the time of his parole hearing.  (Id. at 57-59.)
However, the record of Petitioner's proceedings shows that the
panel considered Petitioner's individual case and made a decision
based on Petitioner's continued dangerousness.  There is no
indication in the record that the panel or BPH considered any
policy of routine denial in determining that Petitioner was
unsuitable.

Petitioner challenges the reliability of the psychological
evaluation, arguing that his remorse for his crime far exceeded
that reported by the evaluator.  He attaches to his petition a
report of the Inspector General of the State of California
rendered in July 2010 concerning the BPH's process for preparing
psychological evaluations.  The report found that the parole
board lacked reliable data to determine the number of factual
errors contained in psychological evaluations and to determine
the number of low, medium, and high risk assessment conclusions
made in the reports.  It also found that the BPH did not actively
monitor senior psychologists' activities by requiring them to
account for their time by case or by activity.  (Pet., Ex. E,
doc. 2, 164.)

Here, the nature and extent of Petitioner's remorse for his
crime as well as his reaction to the psychological evaluation

were covered in detail during the panel's examination of

Petitioner during the hearing. (Doc. 2, 40-57, 112-116.) The

psychological evaluation was only one of many factors cited by

the BPH in support of the decision that Petitioner was not

suitable for parole. Petitioner received all the process that

was due, including an opportunity to address the psychological

report. The Court concludes that Petitioner has not stated facts

to establish a real possibility of constitutional error with

respect to this claim.

Because the complete record of Petitioner's parole hearing

is before the Court, granting leave to amend the petition in this

regard would be futile. This Court will, therefore, recommend

that this claim be dismissed without leave to amend.

VIII.   <u>Inability to Contest the Evidence Ultimately
        Relied on by the BPH</u>

Petitioner argues that inmates do not know what evidence is

determined to render them unsuitable for parole until after the

panel's deliberations when the decision is announced; thereafter,

there is no opportunity to object to or contest the evidence.

(Pet. 33.)

As previously noted, Petitioner was entitled to an

opportunity to review his records, to be heard, and a statement

of reasons. <u>Swarthout</u>, 131 S.Ct. 859, 862. Federal due process

of law does not require more. Petitioner received all process

that was due. Further, Petitioner had the opportunity to file

habeas petitions in the state courts.

This Court concludes that Petitioner's allegations do not

state a basis for relief in a proceeding pursuant to § 2254.

1 Accordingly, the Court will recommend that Petitioner's claim be
2 dismissed without leave to amend.

3     IX.   Alleged Bias of the Board

4     Petitioner argues that his right to due process of law was
5 violated because, generally, the parole hearing officers were not
6 neutral, fair, or impartial. (Pet. 33.) Petitioner appears to
7 rely on the BPH's finding that he was unsuitable and allegations
8 that parole is denied in the vast majority of cases.

9     A fair trial in a fair tribunal is a basic requirement of
10 due process.  In re Murchison, 349 U.S. 133, 136 (1955).
11 California inmates have a due process right to parole
12 consideration by neutral, unbiased, disinterested decision
13 makers.  O'Bremski v. Maass, 915 F.2d 418, 422 (9th Cir. 1990).
14 Because parole board officials perform tasks that are
15 functionally comparable to those performed by the judiciary, they
16 owe the same duty owed by the judiciary to render impartial
17 decisions in cases and controversies that excite strong feeling
18 because the litigant's liberty is at stake.   Id.

19     Fairness requires an absence of actual bias and of the
20 probability of unfairness.  In re Murchison, 349 U.S. at 136.
21 Bias may be actual, or it may consist of the appearance of
22 partiality in the absence of actual bias.  Stivers v. Pierce, 71
23 F.3d 732, 741 (9th Cir. 1995).  A showing that the adjudicator
24 has prejudged, or reasonably appears to have prejudged, an issue
25 is sufficient.  Kenneally v. Lungren, 967 F.2d 329, 333 (9th Cir.
26 1992).  There is, however, a presumption of honesty and integrity
27 on the part of decision makers which may be overcome by evidence
28 of a risk of actual bias or prejudgment based on special facts

and circumstances.  <u>Withrow v. Larkin</u>, 421 U.S. 35, 46-47, 58 (1975).

The mere fact that a board denies relief in a given case or has denied relief in the vast majority of cases does not demonstrate bias.  <u>Stivers v. Pierce</u>, 71 F.3d at 742.  This is because unfavorable judicial rulings alone are generally insufficient to demonstrate bias unless they reflect such extreme favoritism or antagonism that the exercise of fair judgment is precluded.  <u>Liteky v. United States</u>, 510 U.S. 540, 555 (1994).

Although the vast majority of parole applications may be denied, where the record demonstrates that the parole authority considered the pertinent factors in an individual case and rested its decision on pertinent factors disclosed in the record, and where there is an absence of evidence that the authority was biased by a no-parole policy during the hearing or that parole was denied because of a no-parole policy, the petitioner has not shown that the parole authority was biased.  <u>Orozco v. Clark</u>, 705 F.Supp.2d 1158, 1174-75 (C.D.Cal. 2010); <u>Brazil v. Davison</u>, 639 F.Supp.2d 1129, 1154-57 (C.D.Cal. 2009).  Vague allegations of such a policy coupled with statistical evidence of denials of parole in almost all cases is insufficient to establish a violation of due process based on the existence of such a policy where in the individual case, the record reflects that the denial of parole was derived from the BPH's evaluation of the prisoner's suitability at the time of the hearing.  <u>Brazil v. Davison</u>, 639 F.Supp.2d at 1156-57.  Such a claim is too vague, conclusional, and lacking in adequate factual and legal support to establish a basis for federal habeas relief.  <u>Id.</u> at 1157.

1    Even in the more procedurally demanding context of parole

2 revocation, the neutrality requirement is satisfied if the

3 revocation decision is made by someone other than the parole

4 officer who reported the parole violations or recommended

5 revocation.  Morrissey v. Brewer, 408 U.S. 471, 486 (1972).

6 Neutrality does not require employment by a different agency, a

7 law degree, or election or appointment as a judicial officer.

8 Id.  Thus, where the members of the BPH who denied a parole

9 application were not responsible for the prisoner's arrest or

10 prosecution, had not stated before the hearing that they

11 considered the prisoner unfit for release, and based their

12 decision on an individualized assessment of the prisoner's

13 circumstances, no bias was established.  Brazil v. Davison, 639

14 F.Supp.2d at 1158-59.

15    Here, at the hearing, Petitioner did not challenge the panel

16 members on the basis of bias.  Petitioner has not alleged facts

17 that would warrant an inference that the panel or BPH was biased.

18 Further, a review of the full record of the parole hearing shows

19 that the panel members considered the pertinent factors, gave

20 Petitioner an opportunity to testify and to be heard, and

21 provided the reasons for their decision.

22    Because a full record of the proceedings is already before

23 the Court, granting leave to Petitioner to amend would be futile

24 as Petitioner could not state a tenable due process claim based

25 on alleged bias.  Accordingly, the Court will recommend that the

26 claim be dismissed without leave to amend.

27    X.  Ex Post Facto Law

28    Petitioner argues that the application to him of Proposition

26

9 violates the prohibition against ex post facto laws because the law, which was passed after Petitioner's conviction, lengthened the periods of time between parole hearings.

The Constitution provides, "No State shall... pass any... ex post facto Law." U.S. Const. art I, § 10. The Ex Post Facto Clause prohibits any law which: 1) makes an act done before the passing of the law, which was innocent when done, criminal; 2) aggravates a crime and makes it greater than it was when it was committed; 3) changes the punishment and inflicts a greater punishment for the crime than when it was committed; or 4) alters the legal rules of evidence and requires less or different testimony to convict the defendant than was required at the time the crime was committed. <u>Carmell v. Texas</u>, 529 U.S. 513, 522 (2000).

Application of a state regulation retroactively to a defendant violates the Ex Post Facto Clause if the new regulations create a "sufficient risk" of increasing the punishment for the defendant's crimes. <u>Himes v. Thompson</u>, 336 F.3d 848, 854 (9th Cir. 2003) (citing <u>Cal. Department of Corrections v. Morales</u>, 514 U.S. 499, 509 (1995)). When the rule or statute does not by its own terms show a significant risk, the claimant must demonstrate, by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule. <u>Garner v. Jones</u>, 529 U.S. 244, 250, 255 (2000).

Previous amendments to Cal. Pen. Code § 3041.5, which initiated longer periods of time between parole suitability

hearings, have been upheld against challenges that they violated the Ex Post Facto Clause. See, e.g., California Department of Corrections v. Morales, 514 U.S. 499, 509 (1995); Watson v. Estelle, 886 F.2d 1093, 1097-98 (9th Cir. 1989). Similarly, a state law permitting the extension of intervals between parole consideration hearings for all prisoners serving life sentences from three to eight years does not violate the Ex Post Facto Clause where expedited parole review was available upon a change of circumstances or receipt of new information warranting an earlier review, and where there was no showing of increased punishment. Under such circumstances, there was no significant risk of extending a prisoner's incarceration. Garner v. Jones, 529 U.S. at 249.

In Gilman v. Schwarzenegger, 638 F.3d 1101, 1109-11 (9th Cir. 2011), the Ninth Circuit reversed a grant of injunctive relief to plaintiffs in a class action seeking to prevent the board from enforcing Proposition 9's amendments that defer parole consideration. The court noted that the changes wrought by Proposition 9 were noted to be more extensive than those before the Court in Morales and Garner; however, advanced hearings, which would remove any possibility of harm, were available upon a change in circumstances or new information. Id. The Court concluded that in the absence of facts in the record from which it might be inferred that Proposition 9 created a significant risk of prolonging Plaintiffs' incarceration, the plaintiffs had not established a likelihood of success on the merits on the ex post facto claim. Id. at 1110-11.

///

1    This Court may take judicial notice of court records.  Fed.

2  R. Evid. 201(b); United States v. Bernal-Obeso, 989 F.2d 331, 333

3  (9th Cir. 1993); Valerio v. Boise Cascade Corp., 80 F.R.D. 626,

4  635 n.1 (N.D. Cal. 1978), aff'd, 645 F.2d 699 (9th Cir. 1981).

5    The Court takes judicial notice of the docket and specified

6  orders in the class action pending in this district, Gilman v.

7  Fisher, 2:05-cv-00830-LKK-GGH, including the order granting

8  motion for class certification filed on March 4, 2009 (Doc. 182,

9  9:7-15), which indicates that the Gilman class is made up of

10  California state prisoners who 1) have been sentenced to a term

11  that includes life, 2) are serving sentences that include the

12  possibility of parole, 3) are eligible for parole, and 4) have

13  been denied parole on one or more occasions.  The docket further

14  reflects that the Ninth Circuit affirmed the order certifying the

15  class.  (Docs. 257, 258.)  The Court also takes judicial notice

16  of the order of March 4, 2009, in which the court described the

17  case as including challenges to Proposition 9's amendments to

18  Cal. Pen. Code § 3041.5 based on the Ex Post Facto Clause, and a

19  request for injunctive and declaratory relief against

20  implementation of the changes.  (Doc. 182, 5-6.)

21    Petitioner seeks a new parole hearing under the laws in

22  effect at the time of his conviction.  Resolution of Petitioner's

23  claim might well involve the scheduling of Petitioner's next

24  suitability hearing and the invalidation of state procedures used

25  to deny parole suitability, matters removed from the fact or

26  duration of confinement.  Such types of claims have been held to

27  be cognizable under 42 U.S.C. § 1983 as claims concerning

28  conditions of confinement.  Wilkinson v. Dotson, 544 U.S. 74, 82

(2005).  Thus, they may fall outside the core of habeas corpus

relief.  <u>See</u>, <u>Preiser v. Rodriquez</u>, 411 U.S. 475, 485-86 (1973);

<u>Nelson v. Campbell</u>, 541 U.S. 637, 643 (2004); <u>Muhammad v. Close</u>,

540 U.S. 749, 750 (2004).

   Further, the relief Petitioner requests overlaps with the

relief requested in the <u>Gilman</u> class action.  A plaintiff who is

a member of a class action for equitable relief from prison

conditions may not maintain an individual suit for equitable

relief concerning the same subject matter.  <u>Crawford v. Bell</u>, 599

F.2d 890, 891-92 (9th Cir. 1979).  It is contrary to the

efficient and orderly administration of justice for a court to

proceed with an action that would possibly conflict with or

interfere with the determination of relief in another pending

action, which is proceeding and in which the class has been

certified.

   Here, Petitioner's own allegations reflect that he qualifies

as a member of the class in <u>Gilman</u>.  The court in <u>Gilman</u> has

jurisdiction over the same subject matter and may grant the same

relief.  A court has inherent power to control its docket and the

disposition of its cases with economy of time and effort for both

the court and the parties.  <u>Landis v. North American Co.</u>, 299

U.S. 248, 254-255 (1936); <u>Ferdik v. Bonzelet</u>, 963 F.2d 1258, 1260

(9th Cir. 1992).  In the exercise of its inherent discretion,

this Court concludes that dismissal of Petitioner's ex post facto

claim in this action is appropriate and necessary to avoid

interference with the orderly administration of justice.  <u>Cf.</u>,

<u>Crawford v. Bell</u>, 599 F.2d 890, 892-93; <u>see</u> <u>Bryant v. Haviland</u>,

2011 WL 23064, *2-*5 (E.D.Cal. Jan. 4, 2011).

1    A petition for habeas corpus should not be dismissed without
2  leave to amend unless it appears that no tenable claim for relief
3  can be pleaded were such leave granted.  Jarvis v. Nelson, 440
4  F.2d 13, 14 (9th Cir. 1971).  In view of the allegations of the
5  petition and the pendency of the Gilman class action, amendment
6  of the petition with respect to the ex post facto claim would be
7  futile.  Accordingly, this Court will recommend that Petitioner's
8  ex post facto claim be dismissed without leave to amend.

9    XI.  Certificate of Appealability

10   Unless a circuit justice or judge issues a certificate of
11  appealability, an appeal may not be taken to the Court of Appeals
12  from the final order in a habeas proceeding in which the
13  detention complained of arises out of process issued by a state
14  court.  28 U.S.C. § 2253(c)(1)(A); Miller-El v. Cockrell, 537
15  U.S. 322, 336 (2003).  A certificate of appealability may issue
16  only if the applicant makes a substantial showing of the denial
17  of a constitutional right.  § 2253(c)(2).  Under this standard, a
18  petitioner must show that reasonable jurists could debate whether
19  the petition should have been resolved in a different manner or
20  that the issues presented were adequate to deserve encouragement
21  to proceed further.  Miller-El v. Cockrell, 537 U.S. at 336
22  (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)).  A
23  certificate should issue if the Petitioner shows that jurists of
24  reason would find it debatable whether the petition states a
25  valid claim of the denial of a constitutional right and that
26  jurists of reason would find it debatable whether the district
27  court was correct in any procedural ruling.  Slack v. McDaniel,
28  529 U.S. 473, 483-84 (2000).

1    In determining this issue, a court conducts an overview of

2    the claims in the habeas petition, generally assesses their

3    merits, and determines whether the resolution was debatable among

4    jurists of reason or wrong.  Id.  It is necessary for an

5    applicant to show more than an absence of frivolity or the

6    existence of mere good faith; however, it is not necessary for an

7    applicant to show that the appeal will succeed.  Miller-El v.

8    Cockrell, 537 U.S. at 338.

9    A district court must issue or deny a certificate of

10   appealability when it enters a final order adverse to the

11   applicant.  Rule 11(a) of the Rules Governing Section 2254 Cases.

12   Here, it does not appear that reasonable jurists could

13   debate whether the petition should have been resolved in a

14   different manner.  Petitioner has not made a substantial showing

15   of the denial of a constitutional right.

16   Therefore, it will be recommended that the Court decline to

17   issue a certificate of appealability.

18   XII.  Recommendations

19   Accordingly, it is RECOMMENDED that:

20   1)  The petition for writ of habeas corpus be DISMISSED

21   without leave to amend; and

22   2)  The Court DECLINE to issue a certificate of

23   appealability; and

24   3)  The Clerk be DIRECTED to close the action because an

25   order of dismissal would terminate the proceeding in its

26   entirety.

27   These findings and recommendations are submitted to the

28   United States District Court Judge assigned to the case, pursuant

32

to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within fourteen (14) days (plus three (3) days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    June 6, 2012**                                 /s/ Sheila K. Oberto
                                              UNITED STATES MAGISTRATE JUDGE