1

2

3

4

5

6

7          UNITED STATES DISTRICT COURT

8            EASTERN DISTRICT OF CALIFORNIA

9

10

CUAHUTEMOC ROMERO,              ) 1:12-cv—00678-AWI-SKO-HC
11                              )
                  Petitioner,   ) FINDINGS AND RECOMMENDATIONS TO
12                              ) DISMISS THE PETITION WITHOUT
                                ) LEAVE TO AMEND (DOCS. 1, 2)
13     v.                       )
                                ) FINDINGS AND RECOMMENDATIONS TO
14 STATE OF CALIFORNIA, and JAMES) DECLINE TO ISSUE A CERTIFICATE OF
   D. HARTLEY, Warden,          ) APPEALABILITY AND TO DIRECT THE
15                              ) CLERK TO CLOSE THE ACTION
                  Respondents.  )
16                              ) OBJECTIONS DEADLINE:
   _____) THIRTY (30) DAYS
17

18         Petitioner is a state prisoner proceeding pro se and in

19 forma pauperis with a petition for writ of habeas corpus pursuant

20 to 28 U.S.C. § 2254.  The matter has been referred to the

21 Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local

22 Rules 302 through 304.  Pending before the Court is the petition,

23 which was filed on April 30, 2012.

24         I.  Screening the Petition

25         Rule 4 of the Rules Governing § 2254 Cases in the United

26 States District Courts (Habeas Rules) requires the Court to make

27 a preliminary review of each petition for writ of habeas corpus.

28 The Court must summarily dismiss a petition "[i]f it plainly

                              1

appears from the petition and any attached exhibits that the
petitioner is not entitled to relief in the district court...."
Habeas Rule 4; O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir.
1990); see also Hendricks v. Vasquez, 908 F.2d 490 (9th Cir.
1990).  Habeas Rule 2(c) requires that a petition 1) specify all
grounds of relief available to the Petitioner; 2) state the facts
supporting each ground; and 3) state the relief requested.
Notice pleading is not sufficient; rather, the petition must
state facts that point to a real possibility of constitutional
error.  Rule 4, Advisory Committee Notes, 1976 Adoption;
O'Bremski v. Maass, 915 F.2d at 420 (quoting Blackledge v.
Allison, 431 U.S. 63, 75 n.7 (1977)).  Allegations in a petition
that are vague, conclusory, or palpably incredible are subject to
summary dismissal.  Hendricks v. Vasquez, 908 F.2d at 491.

The Court may dismiss a petition for writ of habeas corpus
either on its own motion under Habeas Rule 4, pursuant to the
respondent's motion to dismiss, or after an answer to the
petition has been filed.  Advisory Committee Notes to Habeas Rule
8, 1976 Adoption;  see, Herbst v. Cook, 260 F.3d 1039, 1042-43
(9th Cir. 2001).  A petition for habeas corpus should not be
dismissed without leave to amend unless it appears that no
tenable claim for relief can be pleaded were such leave granted.
Jarvis v. Nelson, 440 F.2d 13, 14 (9th Cir. 1971).

Here, Petitioner alleges that he is an inmate of the Avenal
State Prison (ASP) serving a sentence of fifteen years to life
imposed on April 5, 1999, in the Superior Court of the State of
California, County of Los Angeles, for second degree murder in
violation of Cal. Pen. Code § 187(a).  (Pet. 1, 9.)  Petitioner

1   pled guilty to the offense.  (Id. at 9.)  Petitioner complains of

2   constitutional violations allegedly suffered when California's

3   Board of Parole Hearings (BPH) found on May 25, 2010, at

4   Petitioner's initial parole consideration hearing, that he was

5   unsuitable for parole.  The BPH ruled that Petitioner's next

6   parole suitability proceeding would not occur for five years.

7   Petitioner seeks a new parole hearing to be held under the laws

8   in effect at the time of his conviction.  (Id. at 10, 17.)

9       Petitioner raises the following claims in the petition:  1)

10  his right to due process of law was violated by the state court's

11  construction of Cal. Pen. Code § 3041[1]; 2) the decision denied

12  Petitioner's federal right to due process of law because the

13  decision was arbitrary, capricious, and fundamentally unfair as

14  based on an unreasonable determination of facts; 3) Petitioner

15  was denied due process because the parole hearing was

16  fundamentally unfair based on the BPH's reasons for the decision,

17  which were not authorized by California's regulations or

18  statutes; 4) the parole hearing was fundamentally unfair because

19  the decision was arbitrary and capricious, and it was not based

20  on evidence with scientific support but rather was based on a

21  long-standing practice of rarely setting dates at the initial

22  hearing; 5) the parole procedures were unfair because there was

23  no right to contest the evidence ultimately used by the BPH to

24  find an inmate unsuitable; 6) the BPH was not impartial; and 7)

25  the prohibition against ex post facto laws was violated by the

26  retroactive application to Petitioner of California's Proposition

27

28      [1] Cal. Pen. Code § 3041 provides in pertinent part that a parole release
date shall normally be set at the initial parole consideration hearing.

3

9, the "Victims' Bill of Rights Act of 2008: Marsy's Law," which on November 4, 2008, effected an amendment of Cal. Pen. Code § 3041.5(b)(3) that resulted in a lengthening of the period between parole suitability hearings.

## II.  Background

Petitioner was found guilty of beating to death his girlfriend's daughter, who was two and one-half years old.  The probation officer's report stated that Petitioner claimed that the child fell off a bed and into a wall while playing with Petitioner and the victim's six-year-old brother, sustained a bruise to her eye and nose, and several days later could not be roused to consciousness after an attempt to awaken her, which included slapping her in the face a few times and unsuccessfuly attempting cardio-pulmonary resuscitation.  Petitioner admitted having slapped the victim with an open hand five times on her bare buttocks because she urinated on herself.

Officers observed that the victim had one black and blue eye swollen shut, one yellowish eye with some black and blue coloring, and bruising on both sides of the rib cage, both arms above the wrists, the thighs and lower leg, and both sides of the buttocks.  There were marks on her back and calf, and a cut on her chin.  An autopsy attributed the cause of death to blunt force trauma to the head and manual strangulation.  The victim's brother described incidents that occurred when their mother, the Petitioner's girlfriend, was not home in which Petitioner would hang the victim in a closet by her hands with her arms outstretched, put the victim in cold baths, tie the victim to the toilet with an electric cord, and hit the victim on her back and

buttocks with a belt, causing the victim to cry, scream, and try to bite his fingers.  Once when the victim and her brother were jumping on the bed, Petitioner threw the victim, and her head hit the wall very hard.  (Pet. 18-20.)

Petitioner alleges that he did not deny that his actions caused the victim's death, but he denies having committed intentional or malicious actions against the victim.  (Id. at 22.)  Petitioner contends that his denial of a history of domestic violence was misunderstood as a broader denial of culpability for causing the death of a child after beating her.  (Id. at 23.)

At the parole hearing, Petitioner appeared with counsel, gave extensive sworn testimony to the commissioners in response to their questions, and was given an opportunity to make a statement, which he declined.  (Pet., Ex. B, doc. 2, 35-36, 39-120.)  At the beginning of the hearing, both Petitioner and his counsel acknowledged that Petitioner had been informed of his rights with respect to the hearing, and there had been no violations of those rights.  (Id. at 37-38.)  Petitioner's counsel made a statement in favor of Petitioner's suitability.  (Id. at 118-120.)  Petitioner was present when the commissioners stated their reasons for finding Petitioner unsuitable for parole.  (Id. at 121-133.)

At the hearing, Petitioner accepted the truth of the summary of the facts pertaining to the crime as previously set forth but stated that it was hard to acknowledge all that had occurred; he admitted having slapped the victim's buttocks for urinating, but he denied beating her and maintained that the other bruises were

sustained during rough play and a fall while exiting the shower. He denied knowing how the strangulation marks were caused.  His explanation for the death was that he did not know how to take care of the child, and he imposed hard discipline.  He admitted that she was in cold water because the hot water went away in the shower, but as to the other statements of the victim's brother, Petitioner asserted that the little boy lied, and the victim's other injuries were self-inflicted as a result of her climbing and falling.  (Id. at 42-57.)  Petitioner admitted gang involvement since he was fifteen, membership in a street gang, and an alcohol problem.  (Id. at 77-78, 83.)  He admitted that he had difficulty coming to terms with what he had done, and he further admitted that he had told the psychological evaluator that he was not remorseful for the crime because he could not be remorseful for something he did not do.  (Id. at 112-116.)

     The BPH's reasons for finding Petitioner unsuitable for parole for five years were that Petitioner presented an unreasonable danger to the safety of the public and society.  The conclusion was based on the heinous, callous, and cruel nature of the commitment offense and Petitioner's minimization of his conduct and responsibility for the killing.  The BPH found that Petitioner was not credible because his version of the crime was inconsistent with the physical evidence.  Further, although Petitioner knew that he had made bad decisions, he lacked insight into why he had committed the crime, and he was unable to admit freely facts unrelated to the commitment offense, such as his involvement in gangs.  The BPH also relied on Petitioner's criminal history of spousal abuse and possession of a concealed

weapon, his unstable social history, two previous failures to
succeed on probation, and an unfavorable psychological report,
which indicated a moderate risk of psychopathy, recidivism, and
future violence.  (Id. at 151-153.)  The BPH acknowledged that
Petitioner had participated well in programs in prison.  (Id. at
112-116.)

    After the decision of the commissioners became final,
Petitioner filed a petition for writ of habeas corpus in the Los
Angeles Superior Court.  (Pet., App. 3, doc. 1, 85-90.)  Although
Petitioner characterizes the court's order as a summary denial
(pet. 10), a review of the order reveals that the court set forth
its reasons for denying the petition.  The court concluded that
the record of the parole hearing contained some evidence to
support the determination that Petitioner currently presented an
unreasonable risk of danger to society and a threat to public
safety, and thus he was not suitable for parole.  (Id.)  Further,
the application of Marsy's Law to Petitioner did not violate the
prohibition against ex post facto laws.  (Id.)

    Petitioner sought habeas corpus from the Court of Appeal of
the State of California, Second Appellate District, which denied
the petition summarily on July 12, 2011.  (Pet., App. 2, doc. 1,
83-84.)

    On January 25, 2012, a petition for writ of habeas corpus
filed by Petitioner in the California Supreme Court was summarily
denied.  (Pet., App. 1, doc. 1, 81-82.)

    III.  Legal Standards

    Because the petition was filed after April 24, 1996, the
effective date of the Antiterrorism and Effective Death Penalty

Act of 1996 (AEDPA), the AEDPA applies in this proceeding. <u>Lindh v. Murphy</u>, 521 U.S. 320, 327 (1997), <u>cert.</u> <u>denied</u>, 522 U.S. 1008 (1997); <u>Furman v. Wood</u>, 190 F.3d 1002, 1004 (9th Cir. 1999).

A district court may entertain a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court only on the ground that the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. §§ 2254(a), 2241(c)(3); <u>Williams v. Taylor</u>, 529 U.S. 362, 375 n.7 (2000); <u>Wilson v. Corcoran</u>, 562 U.S. –, –, 131 S.Ct. 13, 16 (2010) (per curiam).

Title 28 U.S.C. § 2254 provides in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Clearly established federal law refers to the holdings, as opposed to the dicta, of the decisions of the Supreme Court as of the time of the relevant state court decision. <u>Cullen v. Pinholster</u>, - U.S. -, 131 S.Ct. 1388, 1399 (2011); <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71 (2003); <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000). A state court's decision contravenes clearly established Supreme Court precedent if it reaches a legal conclusion opposite to, or substantially different from, the

1  Supreme Court's or concludes differently on a materially

2  indistinguishable set of facts. Williams v. Taylor, 529 U.S. at

3  405-06. A state court unreasonably applies clearly established

4  federal law if it either 1) correctly identifies the governing

5  rule but then applies it to a new set of facts in a way that is

6  objectively unreasonable, or 2) extends or fails to extend a

7  clearly established legal principle to a new context in a way

8  that is objectively unreasonable. Hernandez v. Small, 282 F.3d

9  1132, 1142 (9th Cir. 2002); see, Williams, 529 U.S. at 407. An

10  application of clearly established federal law is unreasonable

11  only if it is objectively unreasonable; an incorrect or

12  inaccurate application is not necessarily unreasonable.

13  Williams, 529 U.S. at 410.

14      A state court's determination that a claim lacks merit

15  precludes federal habeas relief as long as it is possible that

16  fairminded jurists could disagree on the correctness of the state

17  court's decision. Harrington v. Richter, 562 U.S. -, 131 S.Ct.

18  770, 786 (2011).

19          IV.  The State Court's Construction of Cal. Pen. Code
                § 3041 as a Violation of Due Process of Law

20

21      Petitioner argues that his right to due process of law and

     his protected liberty interest under Cal. Pen. Code § 3041 were
22
     violated by the state court's construction of Cal. Pen. Code
23
     § 3041, which constituted an unreasonable enlargement of the
24
     statute, failed to restrict administrative discretion, and
25
     permitted the denial of parole in the vast majority of cases.
26
     Petitioner argues that the state court's construction of § 3041
27
28  is contrary to the terms of the statute, contrary to state

1  regulations, and a misapplication of legislative intent.

2  Petitioner contends that a construction that permits the BPH to

3  deny parole to the overwhelming majority of prisoners serving

4  indeterminate sentences perverts the statute and the liberty

5  interest created by the statute; further, it renders individual

6  parole hearings per se unfair and predisposed.

7  Before proceeding further to address the more precise

8  contentions involved in Petitioner's due process argument, two

9  basic principles that limit this Court's review of the state

10 court decisions must be considered.

11 First, the Supreme Court has characterized as reasonable the

12 decision of the Court of Appeals for the Ninth Circuit that

13 California law creates a liberty interest in parole protected by

14 the Fourteenth Amendment Due Process Clause, which in turn

15 requires fair procedures with respect to the liberty interest.

16 Swarthout v. Cooke, 562 U.S. –, 131 S.Ct. 859, 861-62 (2011).

17 However, the procedures required for a parole determination

18 are the minimal requirements set forth in Greenholtz v. Inmates

19 of Neb. Penal and Correctional Complex, 442 U.S. 1, 12 (1979).[2]

20

21 [2] In Greenholtz, the Court held that a formal hearing is not required
    with respect to a decision concerning granting or denying discretionary

22 parole; it is sufficient to permit the inmate to have an opportunity to be
    heard and to be given a statement of reasons for the decision made. Id. at

23 16. The decision maker is not required to state the evidence relied upon in
    coming to the decision. Id. at 15-16. The Court reasoned that because there
    is no constitutional or inherent right of a convicted person to be released

24 conditionally before expiration of a valid sentence, the liberty interest in
    discretionary parole is only conditional and thus differs from the liberty

25 interest of a parolee. Id. at 9. Further, the discretionary decision to
    release one on parole does not involve retrospective factual determinations,

26 as in disciplinary proceedings in prison; instead, it is generally more
    discretionary and predictive, and thus procedures designed to elicit specific

27 facts are unnecessary. Id. at 13. In Greenholtz, the Court held that due
    process was satisfied where the inmate received a statement of reasons for the
    decision and had an effective opportunity to insure that the records being

28 considered were his records, and to present any special considerations
    demonstrating why he was an appropriate candidate for parole. Id. at 15.

Swarthout v. Cooke, 131 S.Ct. 859, 862.   In Swarthout, the Court

rejected inmates' claims that they were denied a liberty interest

because there was an absence of "some evidence" to support the

decision to deny parole.   The Court stated:

> There is no right under the Federal Constitution
> to be conditionally released before the expiration of
> a valid sentence, and the States are under no duty
> to offer parole to their prisoners.   (Citation omitted.)
> When, however, a State creates a liberty interest,
> the Due Process Clause requires fair procedures for its
> vindication–and federal courts will review the
> application of those constitutionally required procedures.
> In the context of parole, we have held that the procedures
> required are minimal.   In Greenholtz, we found
> that a prisoner subject to a parole statute similar
> to California's received adequate process when he
> was allowed an opportunity to be heard and was provided
> a statement of the reasons why parole was denied.
> (Citation omitted.)

Swarthout, 131 S.Ct. 859, 862.   The Court concluded that the

petitioners had received the process that was due as follows:

> They were allowed to speak at their parole hearings
> and to contest the evidence against them, were afforded
> access to their records in advance, and were notified
> as to the reasons why parole was denied....
>
> That should have been the beginning and the end of
> the federal habeas courts' inquiry into whether
> [the petitioners] received due process.

Swarthout, 131 S.Ct. at 862.   The Court in Swarthout expressly

noted that California's "some evidence" rule is not a substantive

federal requirement, and correct application of California's

"some evidence" standard is not required by the federal Due

Process Clause.   Id. at 862-63.

Second, alleged errors in the application of state law are

not cognizable in federal habeas corpus.   Souch v. Schaivo, 289

F.3d 616, 623 (9th Cir. 2002); Langford v. Day, 110 F.3d 1380,

1389 (9th Cir. 1996).   The Court accepts a state court's

1  interpretation of state law.  <u>Langford v. Day</u>, 110 F.3d at 1389.

2  In a habeas corpus proceeding, this Court is bound by the

3  California Supreme Court's interpretation of California law

4  unless the interpretation is deemed untenable or a veiled attempt

5  to avoid review of federal questions.  <u>See</u>, <u>Mullaney v. Wilbur</u>,

6  421 U.S. 684, 691 n.11 (1975); <u>Murtishaw v. Woodford</u>, 255 F.3d

7  926, 964 (9th Cir. 2001).

8      With respect to Petitioner's challenge to § 3041 and the

9  associated regulations, this Court is bound by the California

10 court's determination of state law.

11     At all times pertinent to this action, Cal. Pen. Code § 3041

12 provided in pertinent part, with respect to indeterminately

13 sentenced inmates, as follows:

> One year prior to the inmate's minimum eligible
> parole release date a panel of two or more commissioners
> or deputy commissioners shall again meet with the inmate
> and shall normally set a parole release date as provided
> in Section 3041.5.

17 Cal. Pen. Code § 3041(a).  The statute further provides in part

18 the following:

> The board shall establish criteria for the setting of
> parole release dates and in doing so shall consider the
> number of victims of the crime for which the inmate
> was sentenced and other factors in mitigation or
> aggravation of the crime.

22 (<u>Id.</u>)

23     Although Petitioner asserts that his liberty interest in

24 parole is violated by the reliance on intermediate factors

25 concerning parole suitability expressed in the regulations, the

26 California courts have defined a parolee's expectation as to

27 parole in a different manner.

28     California courts have issued decisions that are

inconsistent with Petitioner's position concerning the propriety of the governing construction and application of § 3041.  The statute has been interpreted to require the BPH to grant parole unless it determines that public safety requires a lengthier period of incarceration because of the gravity of the offense underlying the conviction.  In re Rosenkrantz, 29 Cal.4th 616, 654 (2002).  The expectation of parole applicants is only that they will be granted parole unless the BPH finds, in the exercise of its discretion, that they are unsuitable for parole because currently dangerous in light of the circumstances specified by statute and regulation.  In re Lawrence, 44 Cal.4th 1181, 1204 (2008).

The state courts have determined that the BPH may base a decision to deny parole on the circumstances of the offense or upon other immutable facts, such as an inmate's criminal history, if those facts support the ultimate conclusion that an inmate continues to pose an unreasonable risk to public safety.  Such a conclusion should be based on an individualized consideration of the facts of the crime in the context of the inmate's pre-incarceration and post-incarceration history, the passage of time, and any attendant changes in an inmate's psychological or mental attitude.  In re Lawrence, 44 Cal.4th at 1212, 1214, 1221. A failure to gain insight into the causative factors leading to an offense is an indication that the inmate is currently dangerous.  In re Shaputis, 44 Cal.4th 1241, 1259-60 (2008) (finding that despite considerable evidence of long-term rehabilitation in prison, some evidence existed to support a denial of parole based on the heinous nature of the offender's

murder of his wife, his long history of violent and brutalizing behavior toward the victim and the remainder of the family, his continued insistence that his shooting of the victim was an accident, and his failure to gain insight or understanding into his violent conduct or his commission of the commitment offense); In re Shippman, 185 Cal.App.4th 446, 458-60 (2010) (the offender's lack of insight into what caused him to murder his wife and his minimization of culpable conduct supported a conclusion that the offender would not be able to avert continued misconduct in the future, and thus it indicated continued dangerousness).

This Court is bound by the state court's decisions on matters of state law. A state's misapplication of its own laws does not provide a basis for granting a federal writ of habeas corpus. Roberts v. Hartley, 640 F.3d 1042, 1046 (9th Cir. 2011). It is not for this Court to determine whether the California courts erred in their interpretation of § 3041, their application of the regulatory enactments that were expressly authorized by § 3041(a), or their definition of the liberty interest and the scope of any corresponding expectations of release on parole that may legitimately be held by indeterminately sentenced prisoners.

Petitioner argues that the statutory and regulatory scheme concerning parole necessarily renders individual parole hearings unfair because of the denial of the vast majority of parole applications. As the analysis of Petitioner's claim of a biased tribunal will show in more detail, the mere fact that many or even almost all parole applications are denied is insufficient to demonstrate inherent unfairness.

1      Further, as Petitioner notes, in <u>Swarthout v. Cooke</u>, 131

2  S.Ct. 859, 861-62, the Court stated that fair procedures are

3  required with respect to the liberty interest of an inmate

4  serving an indeterminate term in California.   Insofar as

5  Petitioner's general argument about unfair hearings is pertinent

6  to his individual case, the record shows that Petitioner received

7  notice of the hearing, access to his records, an opportunity to

8  appear and to contest any evidence against him, and a statement

9  of reasons for the decision.   Pursuant to <u>Swarthout v. Cooke</u>, 131

10  S.Ct. 859, Petitioner received all process that was due.   In

11  addition, because California's "some evidence" rule is not a

12  substantive federal requirement, the correct application of

13  California's "some evidence" standard is not required by the

14  federal Due Process Clause.   <u>Id.</u> at 862-63.

15      With respect to Petitioner's specific assertion that his

16  right to due process of law has been violated by the California

17  courts' construction of § 3041, it appears that Petitioner may be

18  relying on cases such as <u>Bouie v. City of Columbia</u>, 378 U.S. 347,

19  350-54 (1964).   In <u>Bouie</u>, the Court condemned the construction of

20  a statute that prohibited entry on another's land with notice

21  that one was not to enter as also including the conduct of

22  remaining on the land after a request to depart.   <u>Bouie</u> held that

23  due process prohibits retroactive application of any judicial

24  construction of a criminal statute that is unexpected and

25  indefensible by reference to the law which has been expressed

26  prior to the conduct in question.   <u>Id.</u>

27      The two basic constitutional principles offended by the

28  state court's statutory construction in <u>Bouie</u> included the due

process requirement of notice and the protection against ex post

facto laws.   The Due Process Clause demands that a criminal

statute give fair warning of the conduct that it makes a crime.

A criminal statute must be sufficiently definite to give a person

of ordinary intelligence fair notice that his contemplated

conduct is forbidden by the statute.   The statute may not either

forbid or require the doing of an act in terms so vague that

persons of common intelligence must necessarily guess at its

meaning and differ as to its application.   The requirement of

notice, however, may be offended not only by a statute's vague or

uncertain terminology, but also by judicial construction of a

statute that is narrow and precise on its face but which by

construction has been unforeseeably and retroactively expanded.

Such a defect in notice can be particularly pernicious because it

does not simply present vagueness or uncertainty, but rather is

affirmatively misleading as to the conduct covered by the

statute.   Id. at 352-53.

Because the state's judicial construction of a criminal

statute is generally not revealed until the decision of the state

court is rendered, the construction is applied after the

occurrence of the conduct sought to be punished as criminal.   In

this sense, the construction is applied retroactively.   It thus

may be contended that the construction operates as an ex post

facto law because it criminalizes an otherwise innocent action

done before the passing of the law or increases punishment for

such conduct.   Id. at 353.

Here, the enactment that was the subject of the allegedly

unconstitutional construction is not a statute defining a

16

criminal offense or sentence, but rather one which, along with related state statutes and regulations, empowers the BPH to consider multiple factors of suitability and to exercise discretion in determining parole suitability. Petitioner's interests are not comparable to the liberty interest of a person charged with a criminal offense. On the contrary, as previously noted, even where state law creates a liberty interest in parole, there is no federal right to be conditionally released before the expiration of a valid sentence. Roberts v. Hartley, 640 F.3d at 1045 (citing Swarthout v. Cooke, 131 S.Ct. at 861-62). Further, the application of the parole statute presents no risk of uncertainty with respect to the conduct included within the scope of a statute imposing criminal liability. Likewise, because neither criminal liability nor criminal punishment is expanded by the challenged construction or application, there is no ex post facto problem.

    In sum, Petitioner's allegations concerning the state's allegedly narrow and restrictive construction or application of § 3041 do not point to a real possibility of constitutional error. In connection with this claim, Petitioner has not alleged facts that would entitle him to relief in a proceeding pursuant to 28 U.S.C. § 2254.

    With respect to the propriety of granting leave to amend the petition, the Court notes that Petitioner has set forth the entire transcript of the parole proceedings, which reflects that he received all process that was due. The defect in Petitioner's due process claim relating to the construction of Cal. Pen. Code § 3041 relates to the nature of the claim and not to any dearth

of allegations of specific facts or other record defect. If
Petitioner were granted leave to amend, he could not state a
tenable due process claim. Thus, granting leave to amend would
be futile.

Accordingly, this Court will recommend that Petitioner's due
process claim concerning California's construction of its
statutes and regulations be dismissed without leave to amend.

V.  Unreasonable Determination of Facts

Petitioner argues that the unsuitability finding was based
on an unreasonable determination of facts, was arbitrary and
capricious, and thus was fundamentally unfair. Petitioner
contends that his failure to accept the "official" version of the
facts of the crime does not automatically render him a danger to
the public safety or unsuitable for parole. Petitioner parses
his denial of responsibility, noting that he admitted causing the
death but simply denied intentional or malicious killing, and
thus he was nevertheless profoundly remorseful for the death.
Petitioner challenges the statements of the victim's brother that
appeared in the probation report concerning the crime because the
child did not make the same statements to other investigators; he
characterizes the statements as untested hearsay statements,
exaggerations, or as fanciful statements emanating from the
little boy's dislike of Petitioner which have been implicitly
retracted. Petitioner, who pled guilty, claims a violation of
his right to confront the witnesses against him, citing cases
concerning trials. He argues that the statements of the child do
not rationally support a conviction of malicious killing.
Regarding the injuries noted in the autopsy report, Petitioner

1   asserts that his own explanations of injuries from play, falls,

2   and harsh discipline are neither impossible nor implausible to a

3   certainty.  Thus, he argues, the conclusions of the panel members

4   that Petitioner failed to take full responsibility, engaged in

5   minimization, and demonstrated lack of insight are subjective,

6   without support, and insufficient to support a finding that

7   Petitioner continued to present an unreasonable risk of

8   dangerousness.  (Pet. 41-49.)

9        Although Petitioner casts his argument as one regarding

10  arbitrary procedures based on the alleged arbitrariness of the

11  result, Petitioner in effect is arguing that the quantum and

12  quality of the evidence was insufficient to support the BPH's

13  findings.  However, as previously noted, review of the state

14  court's conclusion concerning the presence of some evidence to

15  support the finding of unsuitability is not within the scope of

16  this Court's due process review.  To the extent that Petitioner

17  argues that he suffered a denial of his right to confrontation,

18  Petitioner's claim has no merit because Petitioner waived his

19  right to confrontation when he entered his guilty plea.  Florida

20  v. Nixon, 543 U.S. 175, 187 (2004) (citing Boykin v. Alabama, 395

21  U.S. 238, 243 (1969)).

22       This Court concludes that Petitioner's claim concerning the

23  arbitrariness of the hearing should be dismissed without leave to

24  amend.

25       Although unclear, Petitioner appears to contend that his

26  claim is based on substantive due process rights.  However, there

27  is no substantive due process right created by California's

28  parole scheme.  Roberts v. Hartley, 640 F.3d at 1046.  If the

state affords the procedural protections required by <u>Greenholtz</u>

and <u>Cooke</u>, the Constitution requires no more.  <u>Roberts v.</u>

<u>Hartley</u>, 640 F.3d at 1046.  (<u>Id.</u>)

    VI.  <u>Reliance on "Informal" Factors as in Excess of</u>
          <u>Authority and Unfair</u>

Petitioner acknowledges that the primary reason for the

finding of unsuitability was Petitioner's past and present mental

attitude toward the crime, including Petitioner's minimization of

his past conduct.  (Pet. 50.)  He argues, however, that his

hearing was unfair because the BPH relied on these factors and

others (prior arrests or criminality not resulting in

convictions, problematic social relationships, failure to profit

from previous attempts to correct his criminality on probation,

gang activity, drug and alcohol use, and an unfavorable

psychological evaluation) that are not specifically set forth in

Cal. Pen. Code § 3041(b).

At all pertinent times, Cal. Pen. Code § 3041(b) provided in

pertinent part as follows:

> The panel or the board, sitting en banc, shall
> set a release date unless it determines that the
> gravity of the current convicted offense or offenses,
> or the timing and gravity of current or past convicted
> offense or offenses, is such that consideration of the
> public safety requires a more lengthy period of
> incarceration for this individual, and that a parole
> date, therefore, cannot be fixed at this meeting.

However, as previously set forth, in § 3041(a), the California

legislature expressly mandated that the BPH establish criteria

for the setting of parole release dates and to consider factors

in mitigation or aggravation of the crime; there was no express

limitation on the BPH's authority to set criteria.  Further,

§ 3041(b) requires the setting of a release date only in the

1  absence of a determination that the commitment offense or prior

2  offenses are such that consideration of the public safety

3  requires a more lengthy period of incarceration.  In Petitioner's

4  case, the BPH properly considered the safety of the public and

5  concluded that Petitioner continued to present an unreasonable

6  risk of danger.

7      As previously noted, in determining the extent of the

8  offender's current dangerousness, California case law expressly

9  permits a determination of the offender's dangerousness that

10  includes an individualized consideration of the offender's crime,

11  pre-incarceration and post-incarceration history, the passage of

12  time, and the status and development of an inmate's psychological

13  or mental attitude, including a failure to gain insight or

14  understanding into the crime or its commission.  In re Lawrence,

15  44 Cal.4th at 1204, 1212, 1214, 1221; In re Shaputis, 44 Cal.4th

16  at 1259-60; In re Shippman, 185 Cal.App.4th at 458-60.

17  Petitioner's contention that this was an erroneous or

18  unauthorized construction or application of state law amounts to

19  another request that this Court find that the state court's

20  interpretation or application of state law was erroneous.

21  However, no exceptional circumstances are present to displace the

22  governing rule that this Court is bound by the state courts'

23  interpretation of state law.

24      Accordingly, it will be recommended that Petitioner's claim

25  be dismissed without leave to amend.

26      VII.   Unfair Decision Based on Practice to Deny Parole

27      Petitioner argues that the decision was fundamentally unfair

28  because it was arbitrary, capricious, and based not on evidence

1   with scientific support, but rather on a long-standing practice

2   of rarely setting dates at an initial parole hearing.

3       Petitioner alleges that parole is set at initial hearings in

4   only one percent of all cases; parole was denied ninety-eight

5   percent of the time or more in the early 1980's, the 1990's, and

6   thereafter; he alleges that parole was denied eighty-five percent

7   of the time at the time of his parole hearing.  (Id. at 57-59.)

8   However, the record of Petitioner's proceedings shows that the

9   panel considered Petitioner's individual case and made a decision

10  based on Petitioner's continued dangerousness.  There is no

11  indication in the record that the panel or BPH considered any

12  policy of routine denial in determining that Petitioner was

13  unsuitable.

14      Petitioner challenges the reliability of the psychological

15  evaluation, arguing that his remorse for his crime far exceeded

16  that reported by the evaluator.  He attaches to his petition a

17  report of the Inspector General of the State of California

18  rendered in July 2010 concerning the BPH's process for preparing

19  psychological evaluations.  The report found that the parole

20  board lacked reliable data to determine the number of factual

21  errors contained in psychological evaluations and to determine

22  the number of low, medium, and high risk assessment conclusions

23  made in the reports.  It also found that the BPH did not actively

24  monitor senior psychologists' activities by requiring them to

25  account for their time by case or by activity.  (Pet., Ex. E,

26  doc. 2, 164.)

27      Here, the nature and extent of Petitioner's remorse for his

28  crime as well as his reaction to the psychological evaluation

1   were covered in detail during the panel's examination of

2   Petitioner during the hearing.  (Doc. 2, 40-57, 112-116.)   The

3   psychological evaluation was only one of many factors cited by

4   the BPH in support of the decision that Petitioner was not

5   suitable for parole.  Petitioner received all the process that

6   was due, including an opportunity to address the psychological

7   report.  The Court concludes that Petitioner has not stated facts

8   to establish a real possibility of constitutional error with

9   respect to this claim.

10      Because the complete record of Petitioner's parole hearing

11  is before the Court, granting leave to amend the petition in this

12  regard would be futile.  This Court will, therefore, recommend

13  that this claim be dismissed without leave to amend.

14      VIII.   <u>Inability to Contest the Evidence Ultimately</u>
                <u>Relied on by the BPH</u>

15

16      Petitioner argues that inmates do not know what evidence is

17  determined to render them unsuitable for parole until after the

    panel's deliberations when the decision is announced; thereafter,

18  there is no opportunity to object to or contest the evidence.

19  (Pet. 33.)

20

21      As previously noted, Petitioner was entitled to an

22  opportunity to review his records, to be heard, and a statement

23  of reasons.  <u>Swarthout</u>, 131 S.Ct. 859, 862.  Federal due process

24  of law does not require more.  Petitioner received all process

25  that was due.  Further, Petitioner had the opportunity to file

26  habeas petitions in the state courts.

27      This Court concludes that Petitioner's allegations do not

28  state a basis for relief in a proceeding pursuant to § 2254.

1  Accordingly, the Court will recommend that Petitioner's claim be
2  dismissed without leave to amend.

3        IX.   Alleged Bias of the Board

4        Petitioner argues that his right to due process of law was
5  violated because, generally, the parole hearing officers were not
6  neutral, fair, or impartial.  (Pet. 33.)  Petitioner appears to
7  rely on the BPH's finding that he was unsuitable and allegations
8  that parole is denied in the vast majority of cases.

9        A fair trial in a fair tribunal is a basic requirement of
10  due process.  In re Murchison, 349 U.S. 133, 136 (1955).
11  California inmates have a due process right to parole
12  consideration by neutral, unbiased, disinterested decision
13  makers.  O'Bremski v. Maass, 915 F.2d 418, 422 (9th Cir. 1990).
14  Because parole board officials perform tasks that are
15  functionally comparable to those performed by the judiciary, they
16  owe the same duty owed by the judiciary to render impartial
17  decisions in cases and controversies that excite strong feeling
18  because the litigant's liberty is at stake.  Id.

19        Fairness requires an absence of actual bias and of the
20  probability of unfairness.  In re Murchison, 349 U.S. at 136.
21  Bias may be actual, or it may consist of the appearance of
22  partiality in the absence of actual bias.  Stivers v. Pierce, 71
23  F.3d 732, 741 (9th Cir. 1995).  A showing that the adjudicator
24  has prejudged, or reasonably appears to have prejudged, an issue
25  is sufficient.  Kenneally v. Lungren, 967 F.2d 329, 333 (9th Cir.
26  1992).  There is, however, a presumption of honesty and integrity
27  on the part of decision makers which may be overcome by evidence
28  of a risk of actual bias or prejudgment based on special facts

and circumstances. <u>Withrow v. Larkin</u>, 421 U.S. 35, 46-47, 58 (1975).

The mere fact that a board denies relief in a given case or has denied relief in the vast majority of cases does not demonstrate bias. <u>Stivers v. Pierce</u>, 71 F.3d at 742. This is because unfavorable judicial rulings alone are generally insufficient to demonstrate bias unless they reflect such extreme favoritism or antagonism that the exercise of fair judgment is precluded. <u>Liteky v. United States</u>, 510 U.S. 540, 555 (1994).

Although the vast majority of parole applications may be denied, where the record demonstrates that the parole authority considered the pertinent factors in an individual case and rested its decision on pertinent factors disclosed in the record, and where there is an absence of evidence that the authority was biased by a no-parole policy during the hearing or that parole was denied because of a no-parole policy, the petitioner has not shown that the parole authority was biased. <u>Orozco v. Clark</u>, 705 F.Supp.2d 1158, 1174-75 (C.D.Cal. 2010); <u>Brazil v. Davison</u>, 639 F.Supp.2d 1129, 1154-57 (C.D.Cal. 2009). Vague allegations of such a policy coupled with statistical evidence of denials of parole in almost all cases is insufficient to establish a violation of due process based on the existence of such a policy where in the individual case, the record reflects that the denial of parole was derived from the BPH's evaluation of the prisoner's suitability at the time of the hearing. <u>Brazil v. Davison</u>, 639 F.Supp.2d at 1156-57. Such a claim is too vague, conclusional, and lacking in adequate factual and legal support to establish a basis for federal habeas relief. <u>Id.</u> at 1157.

1   Even in the more procedurally demanding context of parole

2   revocation, the neutrality requirement is satisfied if the

3   revocation decision is made by someone other than the parole

4   officer who reported the parole violations or recommended

5   revocation.  Morrissey v. Brewer, 408 U.S. 471, 486 (1972).

6   Neutrality does not require employment by a different agency, a

7   law degree, or election or appointment as a judicial officer.

8   Id.  Thus, where the members of the BPH who denied a parole

9   application were not responsible for the prisoner's arrest or

10  prosecution, had not stated before the hearing that they

11  considered the prisoner unfit for release, and based their

12  decision on an individualized assessment of the prisoner's

13  circumstances, no bias was established.  Brazil v. Davison, 639

14  F.Supp.2d at 1158-59.

15  Here, at the hearing, Petitioner did not challenge the panel

16  members on the basis of bias.  Petitioner has not alleged facts

17  that would warrant an inference that the panel or BPH was biased.

18  Further, a review of the full record of the parole hearing shows

19  that the panel members considered the pertinent factors, gave

20  Petitioner an opportunity to testify and to be heard, and

21  provided the reasons for their decision.

22  Because a full record of the proceedings is already before

23  the Court, granting leave to Petitioner to amend would be futile

24  as Petitioner could not state a tenable due process claim based

25  on alleged bias.  Accordingly, the Court will recommend that the

26  claim be dismissed without leave to amend.

27  X.   Ex Post Facto Law

28  Petitioner argues that the application to him of Proposition

26

9 violates the prohibition against ex post facto laws because the law, which was passed after Petitioner's conviction, lengthened the periods of time between parole hearings.

The Constitution provides, "No State shall... pass any... ex post facto Law." U.S. Const. art I, § 10.  The Ex Post Facto Clause prohibits any law which: 1) makes an act done before the passing of the law, which was innocent when done, criminal; 2) aggravates a crime and makes it greater than it was when it was committed; 3) changes the punishment and inflicts a greater punishment for the crime than when it was committed; or 4) alters the legal rules of evidence and requires less or different testimony to convict the defendant than was required at the time the crime was committed.  <u>Carmell v. Texas</u>, 529 U.S. 513, 522 (2000).

Application of a state regulation retroactively to a defendant violates the Ex Post Facto Clause if the new regulations create a "sufficient risk" of increasing the punishment for the defendant's crimes.  <u>Himes v. Thompson</u>, 336 F.3d 848, 854 (9th Cir. 2003) (citing <u>Cal. Department of Corrections v. Morales</u>, 514 U.S. 499, 509 (1995)).  When the rule or statute does not by its own terms show a significant risk, the claimant must demonstrate, by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule. <u>Garner v. Jones</u>, 529 U.S. 244, 250, 255 (2000).

Previous amendments to Cal. Pen. Code § 3041.5, which initiated longer periods of time between parole suitability

27

1   hearings, have been upheld against challenges that they violated
2   the Ex Post Facto Clause.  See, e.g., California Department of
3   Corrections v. Morales, 514 U.S. 499, 509 (1995); Watson v.
4   Estelle, 886 F.2d 1093, 1097-98 (9th Cir. 1989).  Similarly, a
5   state law permitting the extension of intervals between parole
6   consideration hearings for all prisoners serving life sentences
7   from three to eight years does not violate the Ex Post Facto
8   Clause where expedited parole review was available upon a change
9   of circumstances or receipt of new information warranting an
10  earlier review, and where there was no showing of increased
11  punishment.  Under such circumstances, there was no significant
12  risk of extending a prisoner's incarceration.  Garner v. Jones,
13  529 U.S. at 249.

14       In Gilman v. Schwarzenegger, 638 F.3d 1101, 1109-11 (9th
15  Cir. 2011), the Ninth Circuit reversed a grant of injunctive
16  relief to plaintiffs in a class action seeking to prevent the
17  board from enforcing Proposition 9's amendments that defer parole
18  consideration.  The court noted that the changes wrought by
19  Proposition 9 were noted to be more extensive than those before
20  the Court in Morales and Garner; however, advanced hearings,
21  which would remove any possibility of harm, were available upon a
22  change in circumstances or new information.  Id.  The Court
23  concluded that in the absence of facts in the record from which
24  it might be inferred that Proposition 9 created a significant
25  risk of prolonging Plaintiffs' incarceration, the plaintiffs had
26  not established a likelihood of success on the merits on the ex
27  post facto claim.  Id. at 1110-11.
28  ///

1    This Court may take judicial notice of court records.  Fed.

2  R. Evid. 201(b); United States v. Bernal-Obeso, 989 F.2d 331, 333

3  (9th Cir. 1993); Valerio v. Boise Cascade Corp., 80 F.R.D. 626,

4  635 n.1 (N.D. Cal. 1978), aff'd, 645 F.2d 699 (9th Cir. 1981).

5    The Court takes judicial notice of the docket and specified

6  orders in the class action pending in this district, Gilman v.

7  Fisher, 2:05-cv-00830-LKK-GGH, including the order granting

8  motion for class certification filed on March 4, 2009 (Doc. 182,

9  9:7-15), which indicates that the Gilman class is made up of

10  California state prisoners who 1) have been sentenced to a term

11  that includes life, 2) are serving sentences that include the

12  possibility of parole, 3) are eligible for parole, and 4) have

13  been denied parole on one or more occasions.  The docket further

14  reflects that the Ninth Circuit affirmed the order certifying the

15  class.  (Docs. 257, 258.)  The Court also takes judicial notice

16  of the order of March 4, 2009, in which the court described the

17  case as including challenges to Proposition 9's amendments to

18  Cal. Pen. Code § 3041.5 based on the Ex Post Facto Clause, and a

19  request for injunctive and declaratory relief against

20  implementation of the changes.  (Doc. 182, 5-6.)

21    Petitioner seeks a new parole hearing under the laws in

22  effect at the time of his conviction.  Resolution of Petitioner's

23  claim might well involve the scheduling of Petitioner's next

24  suitability hearing and the invalidation of state procedures used

25  to deny parole suitability, matters removed from the fact or

26  duration of confinement.  Such types of claims have been held to

27  be cognizable under 42 U.S.C. § 1983 as claims concerning

28  conditions of confinement.  Wilkinson v. Dotson, 544 U.S. 74, 82

1  (2005).  Thus, they may fall outside the core of habeas corpus

2  relief.  <u>See</u>, <u>Preiser v. Rodriquez</u>, 411 U.S. 475, 485-86 (1973);

3  <u>Nelson v. Campbell</u>, 541 U.S. 637, 643 (2004); <u>Muhammad v. Close</u>,

4  540 U.S. 749, 750 (2004).

5       Further, the relief Petitioner requests overlaps with the

6  relief requested in the <u>Gilman</u> class action.  A plaintiff who is

7  a member of a class action for equitable relief from prison

8  conditions may not maintain an individual suit for equitable

9  relief concerning the same subject matter.  <u>Crawford v. Bell</u>, 599

10 F.2d 890, 891-92 (9th Cir. 1979).  It is contrary to the

11 efficient and orderly administration of justice for a court to

12 proceed with an action that would possibly conflict with or

13 interfere with the determination of relief in another pending

14 action, which is proceeding and in which the class has been

15 certified.

16      Here, Petitioner's own allegations reflect that he qualifies

17 as a member of the class in <u>Gilman</u>.  The court in <u>Gilman</u> has

18 jurisdiction over the same subject matter and may grant the same

19 relief.  A court has inherent power to control its docket and the

20 disposition of its cases with economy of time and effort for both

21 the court and the parties.  <u>Landis v. North American Co.</u>, 299

22 U.S. 248, 254-255 (1936); <u>Ferdik v. Bonzelet</u>, 963 F.2d 1258, 1260

23 (9th Cir. 1992).  In the exercise of its inherent discretion,

24 this Court concludes that dismissal of Petitioner's ex post facto

25 claim in this action is appropriate and necessary to avoid

26 interference with the orderly administration of justice.  <u>Cf.</u>,

27 <u>Crawford v. Bell</u>, 599 F.2d 890, 892-93; <u>see</u> <u>Bryant v. Haviland</u>,

28 2011 WL 23064, *2-*5 (E.D.Cal. Jan. 4, 2011).

1    A petition for habeas corpus should not be dismissed without

2 leave to amend unless it appears that no tenable claim for relief

3 can be pleaded were such leave granted.  Jarvis v. Nelson, 440

4 F.2d 13, 14 (9th Cir. 1971).  In view of the allegations of the

5 petition and the pendency of the Gilman class action, amendment

6 of the petition with respect to the ex post facto claim would be

7 futile.  Accordingly, this Court will recommend that Petitioner's

8 ex post facto claim be dismissed without leave to amend.

9    XI.  Certificate of Appealability

10    Unless a circuit justice or judge issues a certificate of

11 appealability, an appeal may not be taken to the Court of Appeals

12 from the final order in a habeas proceeding in which the

13 detention complained of arises out of process issued by a state

14 court.  28 U.S.C. § 2253(c)(1)(A); Miller-El v. Cockrell, 537

15 U.S. 322, 336 (2003).  A certificate of appealability may issue

16 only if the applicant makes a substantial showing of the denial

17 of a constitutional right.  § 2253(c)(2).  Under this standard, a

18 petitioner must show that reasonable jurists could debate whether

19 the petition should have been resolved in a different manner or

20 that the issues presented were adequate to deserve encouragement

21 to proceed further.  Miller-El v. Cockrell, 537 U.S. at 336

22 (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)).  A

23 certificate should issue if the Petitioner shows that jurists of

24 reason would find it debatable whether the petition states a

25 valid claim of the denial of a constitutional right and that

26 jurists of reason would find it debatable whether the district

27 court was correct in any procedural ruling.  Slack v. McDaniel,

28 529 U.S. 473, 483-84 (2000).

1    In determining this issue, a court conducts an overview of

2    the claims in the habeas petition, generally assesses their

3    merits, and determines whether the resolution was debatable among

4    jurists of reason or wrong.  Id.  It is necessary for an

5    applicant to show more than an absence of frivolity or the

6    existence of mere good faith; however, it is not necessary for an

7    applicant to show that the appeal will succeed.  Miller-El v.

8    Cockrell, 537 U.S. at 338.

9    A district court must issue or deny a certificate of

10   appealability when it enters a final order adverse to the

11   applicant.  Rule 11(a) of the Rules Governing Section 2254 Cases.

12   Here, it does not appear that reasonable jurists could

13   debate whether the petition should have been resolved in a

14   different manner.  Petitioner has not made a substantial showing

15   of the denial of a constitutional right.

16   Therefore, it will be recommended that the Court decline to

17   issue a certificate of appealability.

18   XII.  Recommendations

19   Accordingly, it is RECOMMENDED that:

20   1)  The petition for writ of habeas corpus be DISMISSED

21   without leave to amend; and

22   2)  The Court DECLINE to issue a certificate of

23   appealability; and

24   3)  The Clerk be DIRECTED to close the action because an

25   order of dismissal would terminate the proceeding in its

26   entirety.

27   These findings and recommendations are submitted to the

28   United States District Court Judge assigned to the case, pursuant

to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within fourteen (14) days (plus three (3) days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   June 6, 2012**                                    /s/ Sheila K. Oberto
                                                             UNITED STATES MAGISTRATE JUDGE